UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-23122-COOKE/GOODMAN

RICARDO T. SANZ,

    Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

    Defendant.

_____/

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, WELLS FARGO BANK, N.A. ("Defendant" or "Wells Fargo"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1(a), hereby files its Statement of Undisputed Material Facts in Support of Motion for Summary Judgment as follows:

1. Plaintiff, RICARDO T. SANZ ("Plaintiff"), was hired by Southeast Bank in 1987. Ex. 1, Ricardo T. Sanz Dep. dtd. 7/9/2020 at 24:6-13,24-25. First Union acquired Southeast Bank in 1991 and later acquired and operated as Wachovia Bank until it was acquired by Wells Fargo in January 2009. *Id*. at 24:14-20,27:1-10.

2. Based on the acquisition, Wells Fargo became Plaintiff's employer in January 2009. Ex. 1 at 130:7-12. Around that time, he applied for Regional Private Banking Manager ("RPBM") and Regional Managing Director ("RMD") positions. *Id*. at 28:4-7,30:18-31:1.

3. In or about July 2009, Wells Fargo hired Plaintiff, then 50-years-old, as RPBM for the Southeast ("SE") Florida region. Ex. 1 at 30:18-32:9,54:7-9; Ex. 2, Offer Letter; Ex. 3, Jeff Haines Dep.dtd. 7/28/2020 at 17:4-5; Ex. 4, Pl.'s Ans. to First Interrog. dtd. 11/13/19 at No.

1. Plaintiff received a base salary of $205,094.00. Ex. 5, Deft.'s Ans. to First Interrog. dtd. 1/17/2020 at No. 7. Because this was above the highest salary for RPBM and career position limit, it could not be raised. *Id.*; Ex. 1 at 138:25-139:23.

4. Upon his hire in 2009, Plaintiff reported to Jason Williams and Jayne Hill. Ex. 1 at 31:2-32:12; Ex. 2; Ex. 6, Jayne Hill Dep.dtd. 7/29/2020 at 26:2-6.

5. As RMD for SE Florida, Mr. Williams managed Plaintiff on a day-to-day basis. Ex. 6 at 51:8-19,20:14-16. Ms. Hill, a Senior Director of Banking, supervised Plaintiff as his banking line of business leader given her focus on banking and credit strategy. *Id.* at 16:20-17:5,20:9-21,21:4-7; Ex. 3 at 55:9-13,145:4-6.

6. Ms. Hill and the RMD were jointly responsible for evaluating the performance of RPBMs. Ex. 6 at 22:20-23:3,26:17-21,117:5-7. They specifically addressed performance as it related to the plan for the RPBM's particular market. *Id*. at 83:10-12,114:19-22,115:2-5.

7. Plaintiff's market was SE Florida. Ex. 1 at 223:6-8. It was the flagship market and very important from a high net worth client perspective. Ex. 6 at 25:7-14,25:17-26:1. It was part of the larger SE United States region, which included other markets. Ex. 3 at 75:23-25.

8. Each year, SE Florida was assigned a plan. Ex. 3 at 172:6-22. Other offices were assigned different plans. *Id.* at 172:2-9; Ex. 6 at 120:23-25. Goals are set at a national level. Ex. 7, Greg Bronstein Dep.dtd. 7/30/20 at 37:9-18.

9. After acquiring Wachovia, Wells Fargo launched the private bank that was completely different than wealth management at Wachovia. Ex. 6 at 26:22-27:2,55:1-9. It involved a much more collaborative team-based model to serve clients. *Id.* at 27:7-15,28:12-16. This model became known as the "One Model On Model" (the "Model") and was used to deliver

2

the appropriate experience to high net worth clients with complex needs through a full team of specialists in different areas. *Id*. at 27:12-29:2,29:7-20.

10. The office for the SE Florida region included the banking, trusts and investment, planning and brokerage lines of business. Ex. 3 at 27:19-24; Ex. 1 at 63:15-22. Each had a local leader and team in their specific area of focus. Ex. 3 at 28:7-14.

11. Plaintiff was the banking leader for SE Florida and all Private Bankers reported to him. Ex. 3 at 30:2-11,31:17-18. Sales and credit sales were important key drivers of the business. Ex. 6 at 68:14-18. One of Plaintiff's primary responsibilities was driving credit sales across all lines of business in SE Florida. *Id*. at 117:19-118:1; Ex. 3 at 180:10-24,172:6-173:4; Ex. 1 at 74:15-75:3. Credit sales performance indicated a banking leader's ability to drive credit execution across the market, but the leader also had to effectively carry out appropriate activities. Ex. 6 at 62:1-3,82:3-5,98:3-9. Part of Plaintiff's role was to carry out leadership activities, such as building the credit pipeline, to drive credit sales. *Id.* at 150:12-151:14. He was also expected to continuously recruit. Ex. 3 at 160:23-24.

12. Plaintiff's performance began to decline in or about 2014, including his sales to goal and credit sales performance, and there was a financial decline over time. Ex. 6 at 60:12-61:1,61:22-62:5,62:19-25,64:4-8,64:17-18,65:11-14,66:12-18. Recruiting was a struggle for him over the years. *Id.* at 101:9-10.

13. In Plaintiff's 2015 Performance Review, Ms. Hill and Mr. Williams specifically outlined that sales and credit to sales plans were not being met. Ex. 6 at 68:3-18,67:13-15,52:8-15. At the office level, SE Florida did not meet its new credit goal and was significantly below plan at 81% and 17% below the prior year. *Id.* at 70:18-71:1; Ex. 8, 2015 Performance Review at

3

pp.3-4. Less than half of Private Bankers met their goal. *Id*. Overall, Plaintiff received a lower rating than the prior year. Ex. 6 at 67:13-68:4; Ex. 8 at p.10.

14. Mr. Williams spoke with his supervisor, Greg Bronstein, about weaknesses in Plaintiff's leadership style. Ex. 7 at 12:4-11,15:3-19,20:4-7,22:10-23:19. Specifically, Plaintiff took a one size fits all approach to leading versus a situational approach that changed towards people with different skills and needs. *Id*. at 23:5-19. Mr. Williams also spoke to him about Plaintiff's declining performance. *Id*. at 24:7-9,16-18.

15. In 2016, Mr. Williams left his RMD role and it was vacant. Ex. 7 at 17:4-9. When Plaintiff expressed his desire to apply, Mr. Bronstein encouraged him just as he would have with any applicant who asked if they could be considered for a role. *Id*. at 17:10-22. Plaintiff applied, but did not have a final interview. *Id*. at 19:5-7; Ex. 1 at 46:9-13,50:2-3.

16. Mr. Bronstein, then 47-years-old, hired Jeff Haines as RMD after final interviews. Ex. 7 at 18:2-5,19:12-19,20:2-3. Plaintiff claims he asked why he was not selected and Mr. Bronstein commented to the effect that he lacked initiative. Ex. 1 at 57:5-16.

17. In October 2016, Mr. Haines became RMD for SE Florida. Ex. 3 at 16:21-17:8. He supervised the local business leaders and their respective teams, including Plaintiff as banking leader, and Wealth Advisors. *Id*. at 27:15-28:14,29:11-30:11.

18. Starting in 2016, all offices nationwide were required to follow the Model in order to provide a consistent client experience. Ex. 3 at 49:11-23. A discovery process was first conducted to evaluate the client's financial situation, needs and goals. *Id.* at 60:15-61:13,63:21-64:8; Ex. 6 at 36:6-25. Based on client needs, a team of specialists was then assembled. Ex. 3 at 60:20-62:20. A relationship manager ("RM") was responsible for conducting discovery and coordinating the team. *Id.*; Ex. 6 at 33:9-20,35:3-22,36:18-37:3. Wealth Advisor was a generalist

role focused on the entire relationship and ensuring all parts of the institution were involved as needed. Ex. 3 at 128:5-9. In the most complex and large relationships, a Wealth Advisor was expected to be RM. *Id.* at 127:1-8,128:5-9; Ex. 6 at 33:24-34:5,199:5-10. A Wealth Advisor may be required in relationships of $5 million and up depending on client needs. Ex. 3 at 61:15-62:20. The tactical sales process was part of the Model. Ex. 1 at 113:20-23.

19. Mr. Haines was responsible for helping SE Florida through a period of transition in 2016, including with respect to the Model. Ex. 3 at 48:3-17. When he became RMD, Mr. Haines evaluated how effectively his leaders were following the Model by observing their day-to-day activities and results as related to goals. *Id*. at 51:12-52:18,54:14-20.

20. At that time in 2016, Ms. Hill believed Plaintiff's performance was declining and there were previously identified areas for improvement. Ex. 6 at 60:7-16. Her role was to discuss his declining performance and areas for improvement in sales, recruiting, and Private Banker productivity and effectiveness with Mr. Haines. *Id*. at 60:17-61:3.

21. Mr. Haines and Ms. Hill looked at team construction, pipeline sufficiency and specific client relationships and agreed that Plaintiff needed to work on the Model and tactical sales process. Ex. 3 at145:1-17. For example, he was not following the Model with respect to two specific clients on which he had a Private Banker as RM. *Id.* at 126:4-12,145:21-24,146:21-147:3,148:5-10,149:4-150:1. For one of them, a Wealth Advisor should have been given an RM due to the complexity of the client's needs. *Id.* at 126:9-13,127:3-8,128:3-5,128:17-25,129:14-15. For the other, a Private Banker ran the relationship without a full team, but a full team was necessary based on the client's wealth level. *Id.* at 148:5-10,149:4-150:1.

22. On November 15, 2016, Ms. Hill and Mr. Haines met with Plaintiff to discuss areas for improvement including proper Model adoption, tactical sales process and recruiting.

5

Ex. 1 at 64:15-23,65:5-9,80:25-81:3; Ex. 3 at 94:14-16,108:5-9,116:16-117:2; Ex. 9, Jeff Haines Dep.dtd. 7/28/2020 "Ex. 2".

23.    In January 2017, Mr. Haines and Ms. Hill had a follow up conversation with Plaintiff about being more on Model. Ex. 1 at 81:4-25. He was given a framework and asked to provide pipeline and meeting reports. *Id.* at 82:9-19,84:17-22,103:16-20.

24.    As an office, SE Florida did not meet its plan for 2016 as new credit sales were at 86% and sourced sales were at 98%. Ex. 3 at 175:3-5,177:18-178:6. Sourced sales included not only new credit, but also brokerage and trust sales. *Id*. at 184:7-13.

25.    Ms. Hill, Mr. Haines and Mr. Bronstein discussed whether to rate Plaintiff as "performing" or "improvement needed" on Wells Fargo's new rating scale given significant performance concerns. Ex. 7 at 28:12-29:19,50:7-12; Ex. 6 at 122:21-124:5; Ex. 3 at 193:8-19. Mr. Haines was disappointed with Plaintiff's numbers and leadership and expressed concerns similar to those brought up by Mr. Williams. Ex. 7 at 33:9-18,35:20-36:8. He felt Plaintiff should be rated as "improvement needed" based on new credit sales, Model adoption, the tactical sales process and recruiting. Ex. 3 at 193:25-195:3. Ultimately, Ms. Hill and Mr. Haines rated him as "performing" and identified clear areas for improvement in his review. *Id.* at 194:18-25; Ex. 6 at 103:5-18,123:5-124:5.

26.    In April 2017, Plaintiff received his 2016 Performance Review. Ex. 1 at 81:15-82:3,70:12-72:21; Ex. 3 at 169:22-170:20; Ex. 10, 2016 Performance Review. It highlighted new credit sales were under plan at 86% and Plaintiff needed to focus on credit sales across all lines of business. Ex. 3 at 177:6-20,178:23-179:5; Ex. 6 at 102:15-22; Ex. 10 at p.3. He was not consistently executing the Model or embracing the tactical sales process. Ex. 3 at 186:20-187:1,187:7-25; Ex. 10 at p.4. Two Private Bankers were hired, but neither met sales

expectations and recruiting remained a major focus as there was not a large number of prospective candidates. Ex. 3 at 143:20-25; Ex. 10 at p.4. As noted in Manager Overall View, items addressed in the review needed to change or there would be a performance improvement plan. Ex. 3 at 201:7-22,205:9-207:3; Ex. 10 at p.8.

27.     Plaintiff continued to have performance problems through the first half of 2017 in key areas outlined in his 2016 Performance Review. Ex. 6 at 137:11-138:7,139:8-14,140:10-17. On June 22, 2017, Ms. Hill and Mr. Haines issued Plaintiff an informal warning performance improvement plan ("Informal PIP") to help him meet goals and succeed. *Id.* at 137:11-138:4,139:8-14; Ex. 3 at 218:2-219:16,220:13-16,229:5-8,233:8-9; Ex. 1 at 89:16-23,90:9-17; Ex. 11, Informal PIP. Credit sales were at 55% of plan and total sourced sales were at 86% of plan based on year-to-date goal through May 2017. Ex. 3 at 221:4-223:15; Ex. 6 at181:9-182:25; Ex. 11 at p.2. Also, SE Florida had insufficient credit pipeline to meet sales goals across all lines of business, a sales credit gap of $1 million, and an insufficient pipeline to close the gap and meet goal through June 2017. Ex. 3 at 225:14-226:11,227:13-17; Ex. 6 at 151:20-152:5; Ex.1 at 95:17-96:20; Ex. 11 at p.2. Plaintiff had ineffective and inconsistent execution of the Model, including tactical sales process and having the right team around the client. Ex. 11 at p.2. He was not engaged in appropriate activities to ensure he was on Model as did not have a full team or Wealth Advisor as RM when needed on client relationships. Ex. 6 at192:4-9. He recalled that Mr. Haines brought up this issue when they met about the PIP. Ex. 1 at 89:21-23,90:9-21,91:8-16. Ms. Hill and Mr. Haines provided specific expectations, measurable goals and an action plan to help Plaintiff to improve in deficient areas. *Id.* at 93:3-7,93:20-94:8,141:6-12,143:4-10; Ex. 6 at 168:22-169:19,191:12-22,192:10-193:1,197:3-25,198:14-19; Ex. 3 at 228:4-7; Ex. 11 at pp.2-3. The PIP stated he may be subject to further corrective action, including termination, if

performance standards were not sustained. Ex. 1 at 127:5-15; Ex. 3 at 238:20-239:1; Ex. 11 at p.3.

28.     On June 30, 2017, Plaintiff submitted a memorandum to Human Resources ("HR") alleging he was targeted for termination based on age. Ex. 5 at No. 10.

29.     On July 5, 2017, assigned Employee Relations Consultant, Karen Lucherk, met with Plaintiff to discuss details and next steps. *Id.*; Ex. 12, Karen Lucherk Dep.dtd. 8/10/2020 at 11:21-12:17,18:10-19:5; Ex. 13, Lucherk Dep. dtd. 8/10/2020 "Ex. 1". Plaintiff said he was presented with an Informal PIP, but that his age had never been mentioned by anyone. Ex. 12 at 19:6-14; Ex. 1 at 128:16-21,140:21-141:5,143:4-10. He primarily discussed the PIP and did not provide sufficient details to substantiate any discrimination. Ex. 12 at 33:8-11,23:5-10,19:15-20,28:20-22. Ms. Lucherk asked Plaintiff to send her details in writing and advise if he wanted to dispute the PIP. *Id.* at 28:10-19. She did not hear back. *Id.* at 36:1-4.

30.     Ms. Lucherk never spoke to Mr. Haines or Ms. Hill about Plaintiff's complaint. Ex. 12 at 42:6-10; Ex. 3 at 266:5-10; Ex. 6 at 18:13-25. Plaintiff did not give Ms. Lucherk permission to contact them. Ex. 12 at 42:10-11,46:22-24,50:9-11; Ex. 1 at 129:1-7. Plaintiff asked Ms. Lucherk if she told them anything and she said no. Ex. 1 at 129:3-7; Ex. 12 at 50:4-11.

31.     On August 11, 2017, Ms. Lucherk sent Plaintiff an e-mail to follow up and asked how he would like to proceed. Ex. 12 at 35:23-36:4; Ex. 1 at 147:18-20. He never responded. Ex. 1 at 147:21-25.

32.     On September 5, 2017, Ms. Lucherk closed her case as Plaintiff had not responded. Ex. 12 at 38:9-14.

33.     The Informal PIP was extended due to a hurricane and Ms. Hill and Mr. Haines assessed Plaintiff's progress after it expired on September 30. Ex. 6 at199:11-200:1; Ex. 3 at

242:5-243:24,244:14-20,246:4-8,247:11-14. They decided to issue Plaintiff a formal warning PIP ("Formal PIP") as he had not met the standards in his Informal PIP, including that credit and total sourced sales were below plan and he continued to have ineffective Model execution and pipeline management. *Id.* It was in effect from October 31 to December 15, 2017. *Id.* at 243:2-19,248:1-7; Ex. 6 at 199:13-16; Ex. 14, Formal PIP.

34. On or about November 2, 2017, Mr. Haines and Ms. Hill met with Plaintiff about his Formal PIP. Ex. 1 at 153:6-154:21,166:10-20; Ex. 3 at 248:21-23. At or around that time, Plaintiff was offered an alternative position. Ex. 1 at 154:14-24. It was a new role called Private Banking Advisor ("PBA") and Ms. Hill wanted him to know it was available and that she and Mr. Haines were supportive if that was his decision. Ex. 6 at 202:15-203:6,203:24-25,204:11-20,208:11-13. It was a non-management producer role at the highest level of Private Banker and focused on complex credit and relationships and a book of business for specific clients. *Id.* at 205:3-19,208:2-9; Ex. 3 at 259:21-260:5; Ex. 1 at 156:2-4. Plaintiff's ability to earn incentive would be the same and Ms. Hill discussed keeping his salary, but he was not interested. Ex. 6 at 206:13-15,209:13-17.

35. Ms. Hill spoke to Plaintiff about the PBA position more than once and encouraged him to consider it. Ex. 1 at 157:20-158:10,183:12-21. Gregory Carr, the new regional leader in place of Mr. Bronstein, also discussed it with Plaintiff. *Id.* at 158:14-18; Ex. 6 at 18:6-12; Ex. 3 at 285:11-18. Plaintiff claimed Mr. Carr said he would hate to see Plaintiff go and asked if he would consider accepting the position. Ex. 1 at 183:12-184:1,184:8-18,159:12-160:4. Plaintiff did not accept the offer and told Ms. Hill that he was not interested. *Id.* at 158:11-12,184:19-24; Ex. 6 at 208:14-22.

36. Throughout the PIP process, Ms. Hill and Mr. Haines continued to assess Plaintiff's progress as to goals and frequently met with him. Ex. 6 at 212:20-213:10. Their purpose was to help him succeed. Ex. 3 at 284:19-285:1. Mr. Haines worked with HR during the PIP process. *Id.* at 214:6-215:22,247:1-4,265:20-25. At the end of November 2017, Plaintiff was still not engaging in the right activities pursuant to the Formal PIP or getting results. *Id.* at 251:17-252:19; Ex. 15, Haines Dep. dtd. 7/28/2020 "Ex. 11"; Ex. 16, Haines Dep. dtd. 7/28/2020 "Ex. 12"; Ex. 17, E-mail from Haines to Sanz dtd. 12/1/17.

37. After the Formal PIP ended and in consultation with HR, Ms. Hill and Mr. Haines recommended Plaintiff's termination. Ex. 3 at 265:1-5,270:16-18; Ex. 6 at 212:4-13. Mr. Carr agreed. Ex. 3 at 270:2-10; Ex. 6 at 218:2-15.

38. Effective on or about February 6, 2018, Plaintiff, then 59-years-old, was terminated from employment. Ex. 5 at No. 11; Ex. 4 at No. 1; Ex. 1 at 182:8-183:5; Ex. 3 at 271:2-4. Ms. Hill was then 54-years-old and Mr. Haines was then 49-years-old. *Id.*; Ex. 18, Jayne Hill Decl. dtd. 1/28/21; Ex. 19, Haines Decl. dtd 1/28/21. Neither was aware of whether Plaintiff had ever complained of discrimination or retaliation. *Id.*

39. On May 21, 2018, Greg Rolle, then 51-years-old, was hired for the RPBM position for SE Florida. Ex. 5 at No. 12; Ex. 1 at 194:11-15.

40. Plaintiff admits Mr. Haines never made any comments to him about his age. Ex. 1 at 100:15-19. He claims Mr. Haines made comments about his willingness to accept change. *Id*. Plaintiff testified, "This is a very clear and deliberate effort to manage somebody that is not accepting change, not changing quick. Is that code for you're too old? I don't know." *Id.* at 101:10-13.

Dated: January 29, 2021            Respectfully submitted,

Liebler, Gonzalez & Portuondo
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, Florida 33130

s/ Carmen Rodriguez
Carmen Rodriguez
Florida Bar No. 710385
Law Offices of Carmen Rodriguez, P.A.
*Of Counsel Liebler, Gonzalez & Portuondo*

s/ Zascha Blanco Abbott
Zascha Blanco Abbott
Florida Bar No. 614671